**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| In re:  GLYNN M. WILLS and<br>       BETTY R. WILLS, | ) ) ) | Case No. 08-80404-FJO-07 |
|        Debtors. | ) ) | |
| GLYNN M. WILLS and<br>BETTY R. WILLS, | ) ) ) | |
|        Plaintiffs, | ) ) | Adversary No. 08-58043 |
| vs. | ) ) | |
| SALLIE MAE SERVICING and<br>NELNET LOANS, | ) ) ) | |
|        Defendants. | ) | |

**DEFENDANT SALLIE MAE, INC.'S BRIEF IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

**I.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

   A.   <u>The Plaintiff and His Loan</u>

   1.   Plaintiff, Glynn M. Wills (hereinafter "Plaintiff"), is an individual whose mailing address is 342 Indiana Avenue, Sullivan, IN 47882.

   2.   The Plaintiff was born in 1940 and is currently 68 years old. [Plaintiff's Response to Defendant's First Set Interrogatories No. 10, a true and correct copy of which is attached hereto as Exhibit "A", and incorporated herein by reference].

   3.   Sallie Mae is the holder of a claim against Glynn M. Wills arising from a Career Training Loan originally disbursed on January 31, 2007, with total disbursements in the amount of $15,237.00, and with an outstanding principal balance of $10,666.32, plus unpaid accrued interest of $278.23, for a total balance due of $10,944.55 as of July 31, 2008. [Loan Application and Promissory Note and Declining Balance Payment History, true and correct copies of which are

1

attached hereto as Exhibits "B" and "C", respectively, and incorporated herein by reference, and Schedule E of the Plaintiff's Bankruptcy Petition, filed in the main bankruptcy case].

4. Plaintiff, Glynn M. Wills, obtained the student loan on behalf of his grandson, Jeremy Wills, who was born in 1985 and is currently 24 years old. [Loan Application and Plaintiff's Response to Defendant's First Set of Interrogatories No. 5, attached hereto].

5. Plaintiff believes that he was merely a co-signor on his grandson's student loan. [Plaintiff's Response to Defendant's First Request For Admissions Nos. 8 and 9, a true and correct copy of which is attached hereto as Exhibit "D", and incorporated herein by reference].

6. However, Plaintiff crossed off the section on the Application titled **Co-Borrower Section** and there is no co-borrower's signature in the space provided on the Application, immediately next to Plaintiff's signature. [Loan Application, attached hereto].

7. Accordingly, Plaintiff did not have a co-signer on his Sallie Mae loan, meaning he is individually liable for the full amount due. [Loan Application, attached hereto].

B. <u>The School</u>

8. The loan amount of $15,237.00 was for Plaintiff's grandson to attend Nashville Auto-Diesel College ("NADC") in Nashville, Tennessee. [Loan Application and Plaintiff's Response to Defendant's First Set of Interrogatories No. 5, attached hereto].

9. Plaintiff was attempting to determine whether the Sallie Mae loan was a qualified education loan, as defined by section 221(d)(1) of the Internal Revenue Code of 1986; Plaintiff also had a serious question about whether the school is a qualified educational institution. [Plaintiff's Response to Defendant's First Request For Admissions No. 14, attached hereto].

2

10. NADC is an "eligible educational institution" under Title IV of the Higher Education Act of 1965, as amended. [Eligibility and Certification Approval Report for NADC, a true and correct copy of which is attached hereto as Exhibit "E", and incorporated herein by reference].

11. The Sallie Mae loan at issue is a "qualified education loan" as it was incurred to pay qualified higher education expenses, i.e. cost of attendance, of a dependent of the Plaintiff. [Cost of Attendance Records for Jeremy Wills, true and correct copies of which are attached hereto as Exhibit "F", and incorporated herein by reference].

12. Jeremy Wills is listed as a dependent of the Plaintiff's on Schedule I of his bankruptcy petition, as well as on his federal tax returns. [2007 Federal Income Tax Return for Glynn M. and Betty R. Wills, a true and correct copy of which is attached hereto as Exhibit "G", and incorporated herein by reference, Plaintiff's Response to Defendant's First Set of Interrogatories No. 6, attached hereto, and Schedule I of the Plaintiff's Bankruptcy Petition, filed in the main bankruptcy case].

13. The grandson started school in January of 2007 and withdrew from school in December of 2007; he did not graduate. [Plaintiff's Response to Defendant's First Set of Interrogatories No. 5, attached hereto].

14. The grandson has not worked for the past five years, "is bi-polar, and has medical problems." [Plaintiff's Response to Defendant's First Set of Interrogatories No. 7, attached hereto].

C.  The Bankruptcy Case and Adversary Proceeding

15.  The Debtors filed a joint voluntary Chapter 7 bankruptcy petition on March 25, 2008, and received a discharge of eligible debts on July 30, 2008.

16.  According to Schedule F, the Debtors had general unsecured debt totaling $31,594.18.  [Schedule F of the Plaintiff's Bankruptcy Petition, filed in the main bankruptcy case].

17.  If Plaintiff's student loan debt is discharged, he will have no payments due on any unsecured debt.  [Plaintiff's Response to Defendant's First Request For Admissions No. 7, attached hereto].

18.  The Plaintiffs commenced this adversary proceeding on July 11, 2008, by filing a Complaint For The Determination of Dischargeability of a Debt pursuant to 11 U.S.C. §523(a)(8)(B) against Sallie Mae and Nelnet Loans.


D.  The Plaintiff's Income and Employment History

19.  From February 14, 2005 to February 9, 2008, the Plaintiff worked as an airfield security officer for the Military Department of Indiana in Indianapolis, Indiana, earning $12.10 per hour and working 37.5 hours per week.  Plaintiff earned gross monthly income of $1,815.84, net $1,466.46.  [Plaintiff's Response to Defendant's First Set of Interrogatories No. 2, attached hereto].

20.  Plaintiff is currently living on a fixed income, including monthly income of $1,085.00 from Social Security, $618.00 from Military Pension—Air Force Retirement, and $1,726.00 from other pension or retirement income.  In addition, his wife receives $432.00 per month from Social Security.  Plaintiff's combined average monthly income totals $3,861.00. [Plaintiff's Response to Defendant's First Set of Interrogatories No. 12, attached hereto, and Schedule I of the Plaintiff's Bankruptcy Petition, filed in the main bankruptcy case].

21.     According to the 2007 Federal Income Tax Return provided by the Plaintiff, Plaintiff had 2007 adjusted gross income of $58,287.00.  [Plaintiff's 2007 Federal Income Tax Return, attached hereto].

22.     According to Plaintiff's Statement of Financial Affairs, Plaintiff had adjusted gross income of $71,743.00 in 2006, $64,262.00 in 2005, and $35,197.00 in 2004.  [Statement of Financial Affairs, paragraph 1, filed in the main bankruptcy case].

23.     Plaintiff's wife, Betty R. Wills, has not been employed since the mid 1960's. [Plaintiff's Response to Defendant's First Request For Admissions No. 10, attached hereto].

24.     The Debtors are retired.  [Plaintiff's Response to Defendant's First Request For Admissions No. 13, attached hereto].

E.      The Plaintiff's Expenses

25.     According to Schedule J of the Plaintiff's Bankruptcy Petition, he has monthly household expenses of $3,773.00, including $795.00 for rent, $250.00 for electricity and heating fuel, $80.00 for water and sewer, $20.00 for telephone, $120.00 for two cell phones, $120.00 for Direct TV, $400.00 for food, $50.00 for clothing, $50.00 for laundry and dry cleaning, $200.00 for medical and dental expenses, $320.00 for transportation, $60.00 for recreation, $50.00 for homeowner's insurance, $215.00 for auto insurance, $85.00 for property taxes, $610.00 for auto installment payments, $100.00 for eye exams/glasses/contact lenses, and $248.00 for student loan payments.  [Schedule J of the Plaintiff's Bankruptcy Petition, filed in the main bankruptcy case].

26.     According to the Plaintiff's response to Defendant's interrogatories, Plaintiff has monthly expenses of approximately $2,165.54, including $795.54 for rent, $100.00 for property taxes, $150.00 for lights, $60.00 for water/sewer/trash, $50.00 for phone, $150.00 for gas, $60.00 for homeowner's insurance, $60.00 for satellite, $100.00 for prescriptions, $600.00 for food, and

$40.00 for life insurance. [Plaintiff's Response to Defendant's First Set of Interrogatories No. 14, attached hereto].

27. According to the Plaintiff's response to Defendant's interrogatories, Plaintiff closed his cell phone account, cut down his cable bill, and eliminated all expenses related to transportation and recreation; Plaintiff no longer owns a vehicle and has taken to walking. [Plaintiff's Response to Defendant's First Set of Interrogatories Nos. 19 and 20, attached hereto].

28. The monthly payment due to Sallie Mae is $228.73. [Plaintiff's Response to Defendant's First Set of Interrogatories No. 13, attached hereto].

E. Funds Available to Repay and Repayment History

29. Taking the income and expenses provided by the Plaintiff on Schedules I and J, which *include* repayment of his student loan debt, the Plaintiff has a monthly **surplus** of $88.00. [Schedules I and J of the Plaintiff's Bankruptcy Petition, filed in the main bankruptcy case].

30. Factoring in the drastic reduction of certain expenses itemized by the Plaintiff in response to Defendant's interrogatories, the Plaintiff has more than enough income to repay his student loan while maintaining at least a minimal standard of living for himself and his dependents. [Plaintiff's Response to Defendant's First Set of Interrogatories No. 14, attached hereto].

31. Plaintiff has made payments totaling only $587.46 on his Sallie Mae student loan, although the account was credited $6,350.65 in disbursement refunds. [Declining Balance Payment History, attached hereto].

F.  Plaintiff's Health

32.  Plaintiff was diagnosed with prostate cancer on September 26, 2006 and has had surgery and radiation treatments, as well as bone scans and MRI's. [Plaintiff's Response to Defendant's First Set of Interrogatories No. 4, attached hereto].

33.  Following a prostate resection surgery done in November 2006, Plaintiff underwent radiation treatments which, according to his physician, "should not prevent him from being able to work his full schedule. He has recovered well from his surgery and he will not be needing any chemotherapy." [Letter from Thomas M. Schmitz, M.D. dated March 6, 2007, a redacted copy of which is attached hereto as Exhibit "H", and incorporated herein by reference].

34.  As of March 4, 2008, 11 months following completion of the postoperative radiation therapy, Plaintiff "has not had any significant new symptoms develop" and "has no clinical evidence of recurrent prostate carcinoma." [Letter from Thomas M. Schmitz, M.D. dated March 4, 2008, a redacted copy of which is attached hereto as Exhibit "I", and incorporated herein by reference].

35.  A bone scan of Plaintiff's whole body taken on September 12, 2008, found "no demonstrable metastatic disease." [Radiology Report by Erdogan Tufekcioglu, M.D., a redacted copy of which is attached hereto as Exhibit "J", and incorporated herein by reference].

36.  Plaintiff's cancer is believed to be in remission. [Plaintiff's Response to Defendant's First Request For Admissions No. 10, attached hereto].

37.  Plaintiff was diagnosed with prostate cancer at the time he applied for, and at the time the Sallie Mae loan was disbursed. [Plaintiff's Response to Defendant's First Set of Interrogatories No. 4, attached hereto].

## II.     SUMMARY JUDGMENT STANDARD

This Court should grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c); Federal Rule of Bankruptcy Procedure 7056. A fact is material if it might affect the outcome of a proceeding under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuine issues of material fact exist when a rational finder of fact could not rule in favor of the non-movant. In re Bryson, 187 B.R. 939, 955 (Bankr. N.D. Ill. 1995).

The moving party bears the burden of showing that there is no genuine issue of material fact in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether the movant has met its burden, the Court should consider all reasonable inferences in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); see also United States v. Beams, 2008 U.S. Dist. LEXIS 31551, at *4-5 (S.D. Ind. 2008). However, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., supra.

8

**III.    ARGUMENT**

    A.    <u>11 U.S.C. §523(a)(8) and the Burden of Proof</u>

11 U.S.C. §523(a)(8) provides that the general discharge under Section 727 does not discharge a qualifying educational loan:

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependants […]

A Plaintiff seeking to discharge student loan debt under 11 U.S.C. §523(a)(8) bears the burden of proving the existence of undue hardship. <u>In re Archibald</u>, 280 B.R. 222, 227 (Bankr. S.D. Ind. 2002); <u>In re Roberson</u>, 999 F.2d 1132, 1137 (7th Cir. 1993). In cases regarding the dischargeability of debt, the standard of proof is met by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 291 (1991); <u>In re O'Hearn</u>, 339 F.3d 559, 565 (7th Cir. 2003).

    B.    <u>Undue Hardship and the *Brunner/Roberson* Test</u>

The term "undue hardship" is not defined by the Bankruptcy Code. The legislative history of 11 U.S.C. §523(a)(8) demonstrates that the purpose behind the statue was to set a high bar to discharge for educational loans, in order to protect the solvency of the educational loan program, while maintaining the Code's overall principle of providing a fresh start for the honest but unfortunate debtor. <u>See</u> H.R. Rep. No. 595, 95th Cong., 1st Sess. 133 (1977)("The heightened standard for discharging student loans is absolutely necessary to prevent abuses of the educational loan system and to safeguard the financial integrity of that system in order to preserve its benefits for future students who will rely on the system as the means for obtaining a college education.").

In the Seventh Circuit, to prove undue hardship, a debtor must demonstrate that: (1) he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loan; and (2) additional circumstances exist indicating

9

that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and (3) the debtor has made a good faith effort to repay the loan. O'Hearn, 339 F.3d at 563; Roberson, 999 F.2d at 1135 (adopting the three-part test set forth by the Second Circuit in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2nd Cir. 1987)(hereinafter referred to as the *Brunner* test).

> 1.  Plaintiff can maintain, based on his current income and expenses, more than a minimal standard of living for himself and his dependents and still repay his Sallie Mae loan.

The first prong of the *Brunner* test is a logical starting point for a §523(a)(8) inquiry "since information regarding the debtor's current financial situation generally will be concrete and readily obtainable; only if the debtor meets this test should a court examine the other two *Brunner* requirements." Roberson, 999 F.2d at 1135. Utilizing the facts and figures supplied by the Debtor in his bankruptcy documents as well as his discovery responses, there can be no doubt that the Plaintiff has the current capability to meet the monthly payments on his Sallie Mae loan while suffering no ill effects on his standard of living.

In fact, the Debtors included their monthly student loan payments in calculating their monthly expenses at $3,773.00. Comparing this figure to the Plaintiff's combined average monthly income of $3,861.00 results in a monthly **surplus** of $88.00. Accordingly, the Plaintiff has concretely demonstrated that he can repay his student loans along with all other household expenses and still have money left over at the end of the month. By definition, the Plaintiff can maintain his current standard of living and repay his loan.

Defendant acknowledges that Plaintiff's financial condition may have changed since the filing of his petition in March of 2008. However, according to Plaintiff's discovery responses, his monthly expenses actually *decreased* as a result of surrendering his vehicles and reducing some inflated expenses related to his cell phones, cable bill, and recreation outlays. Plaintiff therefore

10

has more than enough income to repay his student loan while maintaining at least a minimal standard of living for himself and his dependents.

Notwithstanding a straight comparison of income and expenses, the Plaintiff's standard of living is not "minimal" by any definition. Through Social Security payments and multiple pension and retirement payments, Plaintiff takes home an average of $3,861.00 per month, or $46,332.00 annually. Considering that the Plaintiff is retired, and has fairly fixed expenses for the foreseeable future, he should be able to maintain a comfortable standard of living, well above the federal poverty guidelines.[1] From the income and expenditures provided by the Plaintiff himself, it is undeniable that the Plaintiff has the financial resources necessary to make the monthly payments on his student loan obligation to Sallie Mae without adverse effect on his standard of living. As such, the Plaintiff cannot demonstrate undue hardship.

While the Court may suspend its inquiry upon a showing that Plaintiff cannot satisfy the first part of the *Brunner* test, Defendant will briefly discuss the remaining two prongs. O'Hearn, 339 F.3d at 564 (stating that if the debtor fails on any one element, "the test has not been met and the court need not continue with the inquiry.")(quoting In re Goulet, 284 F.3d 773, 777 (7th Cir. 2002).

---

[1] The 2009 Poverty Guideline established by the Department of Health and Human Services (HHS) for a family of three was $18,310.00. Defendant does not suggest that Plaintiff be required to live at this income level, but uses the poverty guideline for illustrative and comparative purposes only.

11

      2.     Plaintiff failed to prove that additional circumstances exist indicating that any perceived state of affairs is likely to persist for a significant portion of the repayment period of the student loan.

Defendant is not unsympathetic to Plaintiff's claim that he was diagnosed with prostate cancer back in September of 2006. However, Defendant contends that said diagnosis has had little or no impact on the acquisition of the loan or Plaintiff's ability to make payments on it. Specifically, Plaintiff was diagnosed approximately four months prior to the time he applied for the loan, and well before the full amount of the loan was disbursed. In other words, Plaintiff's condition was not unforeseen at the time he contracted to repay the loan. Furthermore, Plaintiff's cancer is in remission and Plaintiff is retired. Plaintiff's condition has no impact on Plaintiff's entitlement to receive his Social Security and retirement income, which, as has been previously demonstrated, is sufficient to meet all of his obligations including the student loan. There is no "certainty of hopelessness" in Plaintiff's situation such that he would be prevented from fulfilling his financial commitments. Roberson, 999 F.2d at 1136.

      3.     Plaintiff's minimal payments on the loan do not constitute a "good faith" effort to repay.

Plaintiff has made payments totaling only $587.46 on his Sallie Mae student loan. A majority of these payments were for $10.00 and $20.00 each. These minimal payments were all made in 2007, when the Plaintiff was working and had adjusted gross income of $58,287.00. More importantly, perhaps, is the fact that Plaintiff filed for bankruptcy well before any significant payment history could be established. The Sallie Mae loan was first disbursed on January 31, 2007. The Plaintiff filed for bankruptcy less than 14 months later, on March 25, 2008. Plaintiff has demonstrated an ability to make a monthly payment to Sallie Mae of at least $228.73 which he budgeted for in his bankruptcy Schedules. However, he chose to immediately seek to discharge the loan soon after obtaining the loan proceeds.

12

Furthermore, the Plaintiff's situation is not a result of "factors beyond his reasonable control." Roberson, 999 F.2d at 1136. A stated previously, Plaintiff, who was nearing the age of retirement regardless of his health situation, voluntarily sought a student loan on behalf of his grandson. Plaintiff was already diagnosed with prostate cancer at the time he applied for the loan. Plaintiff also chose not to have a co-signor on the loan, including his grandson, exposing himself to sole liability at a time when he reasonably should have known his condition could worsen. Finally, the subject of the loan, Plaintiff's grandson, has been characterized by the Plaintiff as "bi-polar, and has medical problems."

Plaintiff had no legal obligation to apply for a student loan for his grandson, especially given the dim prospects for any assistance in repaying the loan. Defendant contends that any perceived hardship resulting from the student loan was self-imposed and easily avoidable. As such, Plaintiff should not be permitted to walk away from this obligation just months after receiving the benefits. As stated in Roberson, "[t]he decision of whether or not to borrow for a college education lies with the individual . . . If the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow." Id. at 1137.

In the instant case, the student is not the borrower, but for the reasons set forth below, they are treated the same for purposes of §523(a)(8).

13

C. Educational Loans are Subject to the Non-Dischargeability of §523(a)(8), Even for Non-Student Obligors Who Received No Educational Benefit

The Plaintiff's Complaint seeking discharge of the debt makes no mention of the fact that Plaintiff believes he is not liable on the loan. In fact, the only grounds upon which he seeks discharge is undue hardship. However, in his discovery responses, Plaintiff indicates his belief that he was merely a co-signor on his grandson's student loan. In response, the Court only need look at the actual Application submitted by Plaintiff. Plaintiff crossed off the section on the Application titled **Co-Borrower Section** and there is no co-borrower's signature in the space provided on the Application, immediately next to Plaintiff's signature. At the time he filled out the Application, it appears that Plaintiff wanted to leave no doubt that he was the sole borrower on the loan.

Regardless of whether the Plaintiff was the sole maker of the loan, or a co-obligor on his grandson's student loan, the law holds him liable for purposes of §523(a)(8). As stated by the Court in In re Barth, 86 B.R. 146 (Bankr. W.D. Wis. 1988), "the language of section 523(a)(8) is concerned with the nature of the loan, rather than what benefits the debtor may or may not have derived from the loan." Id. at 147. The legislative history of section 523(a)(8) demonstrates Congress' determination to "safeguard the financial integrity of educational loan programs by limiting the instances in which such obligations can be discharged in bankruptcy. . . . This goal is served by barring discharge of educational loans signed by parents." In re Hammarstrom, 95 B.R. 160, 164 (Bankr. N.D. Cal. 1989).

In other cases, where debtors have taken out student loans for their children or other family members, the debtors are held liable despite the fact that they did not receive benefits themselves. The plain meaning of section 523(a)(8) "strongly suggests that educational loans are nondischargeable whether the named borrower is a student or not." In re Karben, 201 B.R. 681, 683 (Bankr. S.D.N.Y. 1996). In fact, the majority of the courts which have considered the issue have concluded that student loans obtained by parents for the educational benefit of a child are

nondischargeable. In re Hamblin, 277 B.R. 676, 679 (Bankr. S.D. Miss. 2002); see also In re Votruba, 310 B.R. 698 (Bankr. N.D. Ohio 2004)("[P]rovisions of 11 U.S.C. §523(a)(8) applied even though debtor was not student; thus, debtor was required to show undue hardship to obtain discharge of loans."); In re Davis, 316 B.R. 610, 614 (Bankr. S.D.N.Y. 2004); In re Clark, 273 B.R. 207 (Bankr. N.D. Iowa 2002).

Accordingly, in order to receive a discharge of the Sallie Mae student loan for which he is the sole obligor, Plaintiff must prove that repayment would impose an undue hardship under §523(a)(8), which he cannot.

        D.       Plaintiff's Loan is a Qualified Education Loan, as Defined in Section 221(d)(1) of the Internal Revenue Code of 1986

Again, nowhere in Plaintiff's Complaint does he question the fact that the Sallie Mae loan in question is not a qualified education loan. However, in his discovery responses, Plaintiff indicates that he was attempting to determine whether the Sallie Mae loan was a qualified education loan, as defined by section 221(d)(1) of the Internal Revenue Code of 1986; Plaintiff also had a serious question about whether the school is a qualified educational institution. Accordingly, and for the purposes of addressing all potential arguments, Defendant will resolve this issue.

Section 221(d)(1) of the Internal Revenue Code defines a qualified education loan as "any indebtedness incurred . . . to pay qualified higher education expenses . . . on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer." The term "qualified higher education expenses" is further defined as "the cost of attendance . . . at an eligible educational institution." An "eligible educational institution" has the same meaning given such term by section 25A(f)(2) of the Internal Revenue Code. An eligible educational institution is that which is described and eligible to participate in a program under Title IV of the Higher Education Act of 1965, as amended. 26 U.S.C. §25A(f)(2).

15

The loan in question was for Plaintiff's grandson to attend Nashville Auto-Diesel College ("NADC") in Nashville, Tennessee. As evidenced by the Eligibility and Certification Approval Report for NADC attached hereto, NADC is an "eligible educational institution" under Title IV of the Higher Education Act of 1965, as amended. Furthermore, the Sallie Mae loan at issue is a "qualified education loan" as it was incurred to pay qualified higher education expenses, i.e. cost of attendance, of a dependent of the Plaintiff. Defendant has provided Cost of Attendance Records for Jeremy Wills, attached hereto.

The evidence provided conclusively proves the loan in question is a qualified education loan for purposes of §523(a)(8) and allows the Court to make a final determination that the loan is not subject to discharge for undue hardship.

**IV.     CONCLUSION**

A Plaintiff who has income available to meet reasonable monthly expenses, provide a minimal standard of living for himself and his dependants, and still make the monthly payments on his student loan, does not suffer the kind of undue financial hardship necessary to obtain a discharge of student loan debt. No materials facts remain that could entitle Plaintiff to receive a discharge of this debt. Not only can Plaintiff maintain his standard of living of living for himself and his family, he can do so while repaying his Sallie Mae student loan and *still* have money left over at the end of the month. No special or unique circumstances exist that would lead this Court to believe that the Plaintiff is suffering from any type of undue hardship. Any perceived hardship the Plaintiff is facing was existent at the time he applied for the student loan, and does not impact his future income such that he could not continue a comfortable lifestyle. As such, Plaintiff is not entitled to

16

relief and his outstanding student loan should be found to be nondischargeable as envisioned by Congress.

              Respectfully submitted,

Dated: 8/7/2009      By:  */s/Karl T. Ryan*
              Karl T. Ryan
              LAW OFFICE OF KARL T. RYAN
              6502 Westfield Boulevard
              Indianapolis, IN  46220
              Telephone: (317) 475-4515
              Facsimile: (317) 475-4516
              Attorney for Defendant, Sallie Mae, Inc.